MARTHA G. BROWN, Adm'x of the Estate of GEO. W. BROWN, deceased, Defendant in Error, *v.* RAILWAY PASSENGER ASSURANCE COMPANY, Plaintiff in Error.

1. *Agency — Skill and discretion — Agency not delegated.* — It is a settled principle in the law of agency that where an authority is conferred requiring skill or discretion on the part of an agent, and no power of substitution is given, then the agent must act in person, and the principal would not be bound by any act of a sub-agent. But this doctrine has no application to the responsibility of an accident insurance company for acts of its sub-agents.

2. *Damages — Railroads — Accident policies — General accident tickets — Vexatious delay.* — An engineer killed on a railroad locomotive had previously purchased a ticket issued by the Railway Passenger Assurance Company, which, by its terms, insured against death "caused by accident while traveling by public or private conveyance provided for the transportation of passengers." Suit being brought by his legal representatives on the policy, the proof showed that defendants were selling two classes of tickets, one

known as the "travelers' risk," the other as the "general accident;" the latter being sold for the highest price; that deceased purchased the latter; that at the time of the purchase defendant's agent knew him to be an engineer, and had no instructions not to sell to railroad employees. *Held*, that deceased was insured against all accidents, without regard to the capacity in which he was acting; that the ticket was intended to cover the accident·by which he met his death; and that defendant was liable. *Held, also*, that it was the duty of defendant to pay upon notification of the death of deceased, and, on its refusal to comply, interest was thenceforth payable.

3. *Insurance, accident, contract of—Stipulations, how construed.—* In a contract of insurance containing mutual stipulations, each stipulation is to be construed favorably to the party entitled to claim its benefit.

4. *Insurance companies—Vexatious refusal, etc.—Damages determined by the jury.—* In actions against insurance companies under Gen. Stat. 1865, ch. 90, § 1, the whole question of vexatious refusal or delay in payment, is to be determined by the jury. But before damages are allowed it need not be explicitly proved by plaintiff that the delay or refusal was vexatious. If upon a full consideration of all the facts and circumstances, they conclude that the refusal was unjustifiable and vexatious, the law authorizes them to assess the damages.

## Error to First District Court.

*Edwards & Son,* for plaintiff in error.

I. There is no proof that Brown was a passenger at the time he was killed, or that he was traveling on any conveyance of the kind described in the petition.

II. The question of vexatious refusal to pay, is a question of fact; and it was error in the court to instruct the jury that they had power to allow the plaintiff damages not exceeding ten per cent., in the absence of proof that the refusal to pay was vexatious. (23 Mo. 520–522; 36 Mo. 521; Gen. Stat. 1865, ch. 90, § 1.)

III. Miller, the agent of the defendant, had no right to delegate his authority to sell tickets to Church. Defendant is not liable for any ticket sold by Church, or any one else deriving his authority to sell from Miller. (Story on Agency, § 13; Bac. Abr., title "Authority," letter D, vol. 1; 2 Kent, 633.)

IV. Unless Brown was a passenger on a conveyance, public or private, provided for the transportation of passengers, at the time he was killed, his policy did not cover the risk, and the defendant is not liable. (36 Mo. 435; 3 Kent's Com. 312, 318.)

*Ewing & Smith*, for defendant in error.

I. Church was a sub-agent of defendant, employed by the agent Miller to transact and perform an act for the defendant that required no personal skill or discretion, and an act which, by implication and the ordinary course of business, the agent was justified and authorized to employ a sub-agent to perform. (Story on Agency, §§ 14, 201, 217, 391, 393, and authorities cited; 1 Pars. on Cont. 82, latter part note *p.;* Mason v. Joseph, 1 Smith's Eng. 406; Powell v. Tuttle, 3 Comst. 396; Williams v. Woods, 16 Md. 220.)

II. The sale of the policy was the act of the agent Miller, and for which he was directly liable to his principal, the defendant. (Story on Agency, §§ 160, 161, and authorities cited.) By the statute, Church was, to all intents and purposes, the agent of defendant. (Gen. Stat. 1865, p. 403, § 5.)

III. A locomotive engine which transports a train of passenger coaches or cars, is eminently a " conveyance used for the transportation of passengers." As well might it be said that the keel of a steamer was not a conveyance for the transportation of passengers, and that a passenger who was in the hold of a boat when the accident occurred, could not recover his insurance.

IV. Brown's ticket was a " general accident ticket," for which he paid the highest price.

WAGNER, Judge, delivered the opinion of the court.

Although several questions have been discussed in the argument of this case, there is really but one requiring any particular consideration. The action was to recover the sum of $5,000, the amount of a policy issued by the defendant, insuring the plaintiff's intestate against death by accident for the period of thirty days.

The ticket covering the insurance policy was in these words: " The Railway Passenger Assurance Company of Hartford, Conn., will pay the owner of this ticket twenty-five dollars per week in case of personal injury causing total disability, for a period not exceeding twenty-six weeks, or the sum of five thou-

sand dollars to his legal representatives, in the event of his death, from personal injury, ensuing within three months from the happening thereof, when caused by any accident while traveling by public or private conveyance, provided for the transportation of passengers in the United States or British North American possessions, it being understood that this policy covers no description of war risk."

Miller was the agent of the defendants for the sale of tickets; and the ticket was purchased by Brown, the deceased, of Church, the clerk of Miller, who transacted his business and sold most of the tickets.  Brown, at the time of purchasing the ticket, was an engineer on the Pacific Railroad, engaged in running trains west of Jefferson City, and, in a short time after the purchase of the ticket, and within the time covered by the policy, he was killed, when so engaged, by an accident occurring on the road.

It is in evidence that, when the ticket was sold, defendant's agent knew that Brown was an engineer; and Miller testifies that he had no instructions not to sell to employees of the railroad till after Brown's death.  It is also shown by the evidence that the company had, and sold, two classes of tickets.  The one was known as the " traveler's risk," the other was the " general accident."  The latter was the highest price.  The ticket sold Brown was the " general accident," for which he paid the highest price.  Upon these facts plaintiff had judgment in both courts below.

The first ground insisted on by the counsel for the plaintiff in error is that the contract and sale was void, because Miller was the agent of the company, and he had no authority or right to delegate the power to Church to sell; that Church was not known to the defendant, and it was, consequently, not bound by his acts. It is without doubt a settled principle in the law of agency that where an authority is conferred requiring skill or discretion on the part of an agent, and no power of substitution is given, there the agent must act in person, and the principal would not be bound by any act of a sub-agent.  But it is not perceived that the doctrine has any application to this case.  These tickets insuring against accidents are made out and signed at the com-

pany's principal office, and transmitted to their various agencies, to be sold indifferently to all who apply for them. The agent does nothing more than deliver them to the applicant and receive pay for them. The person buying them takes them subject to the printed conditions, and, if he violates the conditions, he incurs the hazard of losing all the benefits. As well might it be said that if certain articles of merchandise were deposited with a merchant for sale, the merchant's clerks would be incompetent to sell. It would indeed be monstrous to allow these insurance companies to go on and sell tickets and receive all the profits accruing therefrom, and then, when an accident occurred, to shield themselves from liability upon such a pretext. But the main point in the case is whether the plaintiff's intestate, Brown, was killed by an accident which is covered by the policy. The clause insuring him provides that the death must be "caused by an accident while traveling by public or private conveyance provided for the transportation of passengers."

It is strongly contended that a locomotive or engine is not a conveyance provided for the transportation of passengers. This is certainly true, and if the ticket applies solely and exclusively to passengers or travelers, the position that the company is not liable can not be controverted. A passenger would have no right to go upon an engine, and if he was so indiscreet as to venture on such a place, and injury ensued, he would not be protected. But this ticket was designed to include and cover something more than the ordinary risk incurred by the passenger or traveler. The locomotive is a necessary part of the conveyance. The ticket was a general accident, as contradistinguished from a mere passenger or traveling, ticket. The premium on one is double what it is on the other. When the ticket was sold it was known that Brown was an engineer, and the conclusion is unquestioned that he believed that he was insured while pursuing his employment or occupation. The company so thought, for it gave no instructions against insuring railroad employees till after the disastrous accident happened.

Dr. Paley, in commenting on the rule in relation to the construction and performance of contracts, says: "Where the terms

15—VOL. XLV.

of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it." (Paley's Moral and Polit. Phil. 104.) The consequence of the application of this rule to a contract of insurance containing mutual stipulations is that each stipulation is to be construed favorably to the party entitled to claim its benefit, since it is always a reasonable presumption not only that it was understood by him in its largest sense, but that this was the sense in which the opposite party meant he should receive it.

Mr. Duer, in his admirable treatise on marine insurance, in speaking of the interpretation that should be given to policies (and I know of no reason why the same rule should not be applied here) says: "As a contract of indemnity to the assured, the policy is to be liberally construed in his favor, not only because this mode of construction is most conducive to the interests of commerce, but because, for the reasons that have been stated, it is probably most consonant to the interests of the parties. It is certain that the assured desires as ample an indemnity as he can obtain, and it is probable that the insurer means that he shall understand the indemnity given to be as extensive as its terms, upon any fair interpretation, import." (Duer on Ins. 161.)

As Brown was not insured as a passenger and traveler, but against all accidents, without regard to the capacity in which he was acting, the reasonable inference is that the ticket was intended to cover the risk and accident by which he met his death. If it be conceded that the meaning of the ticket is doubtful or ambiguous, still the question must be decided for the plaintiff, as the promisor would not fail to apprehend that the promisee labored under the impression that he was indemnified, and where such is the case, the construction must be most favorable to the insured.

Two further objections are argued against the judgment: first, that the court instructed the jury to give damages for vexations delay in not paying the amount of the policy; and second, that it allowed them to give interest at the rate of six per cent. on the

amount due from the time defendant was notified of the death of Brown. As to the first objection, the statute in force, and applicable to this case, provides that in any action against any insurance company, if the jury believe that such company has vexatiously refused to pay the loss, they may allow damages not exceeding ten per centum on the amount of the loss, and the court shall enter judgment for the aggregate sum found in the verdict. The whole question of vexatious refusal or delay is a matter of fact to be determined by the jury. They must make up their verdict on this issue by a general survey of all the facts and circumstances in the case; and if, upon a full consideration, they conclude that the refusal was unjustifiable and vexatious, the law authorizes them to assess the damages. The statute will not admit of the construction contended for by the counsel for the plaintiff in error, that before damages are allowed it must be explicitly proved by the plaintiff that the delay or refusal was vexatious.

I am of the opinion that the court committed no error in giving the instruction in relation to interest. The statute declares that creditors shall be allowed to receive interest at the rate of six per cent. per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts. (1 Wagner's Stat. 782, § 1.)

The ticket was a contract between the parties whereby the defendant promised to pay to plaintiff's intestate a certain amount upon the happening of a contingency. When the contingency occurred, the obligation was binding and absolute, and the sum presently due. The rights of the parties were then fixed, and it was the duty of the defendant to pay on notification of the death of Brown; and on its refusal to comply, interest was thenceforth payable. In addition to this law, the statute above referred to, in regard to the assessment of damages, makes express provision for the recovery of interest.

I see no error in the proceedings, and I advise an affirmance of the judgment. Judgment affirmed; the other judges concurring.