ALLAND BARRETT, Respondent, v.  MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 17, 1909.

1. MASTER AND SERVANT: Negligence: Evidence. A servant engaged with others in removing roundhouse doors was injured by a door falling on him. The work was done by two men prying up the door and two men steadying it. The accident occurred while the servant and one man were prying up a door and while only one man was steadying it. The latter was unable to control the door. *Held*, That the proximate cause of the injury was the negligence of the defendant and his two coworkers in undertaking the work without the assistance of the fourth man.

2. ————: Representative of Master. A "straw boss," or one acting in the place of the regular foreman at the request of the latter, represents the master in directing and controlling the work.

Appeal from Cole Circuit Court.—*Hon. Wm. H. Martin,* Judge.

REVERSED.

*George P. B. Jackson* for appellant.

It was not shown that King, the so-called "straw boss," had any authority either to require or dispense with the use of the rope in taking down the door in question; or that he had any more authority than the other members of the gang of men—of which the plaintiff was one, to determine the manner in which or the means by which the doors should be taken down. Brown v. Assurance Co., 45 Mo. 224; Grady v. Insurance Co., 60 Mo. 123; McGowan v. Railroad, 61 Mo. 528; McClure v. Insurance Co., 4 Mo. App. 153; Lingenfelter v. Insurance Co., 19 Mo. App. 265; Smith v. Sublet, 28 Tex. 163; McCormick v. Bush, 38 Tex. 314; 1 Am. and Eng. Enc. of Law (2 Ed.), 972; Story on Agency (8 Ed.), sec. 13. King and plaintiff were both members of the gang of workmen, and as such, were fellow-servants; and the fact that King was called the "straw boss," or even if it had been proven that he had been put in charge of the gang of men in the absence of the regular foreman, this would not have destroyed his relation as fellow-servant to the plaintiff. Lee v. Bridge & Iron Works, 62 Mo. 565; Marshall v. Schricker, 63 Mo. 308; Card v. Eddy, 129 Mo. 510; Smith v. Railroad, 151 Mo. 391; Hawk v. Lumber Co., 166 Mo. 121; Livengood v. Lead & Zinc Co., 179 Mo. 229; Fogarty v. Transfer Co., 180 Mo. 490. The omission to use a rope in taking down the door which fell on plaintiff, or the alleged direction by King to omit the rope, was not the proximate cause of the plaintiff's injury. Brown v. Railroad, 20 Mo. App. 227; Brink v. Railroad, 17 Mo. App. 199; Christy v. Hughes, 24 Mo. App. 277; Banks v. Railroad, 40 Mo. App. 466; Hicks v. Railroad, 46 Mo. App. 309; Henry v. Railroad, 76 Mo. 293; Peasley v. Transfer Co., 148 Mo. 420; Kappes v. Brown Shoe Co.,

116 Mo. App. 154. The master is not required to furnish absolutely safe appliances or adopt absolutely safe methods, nor to pursue the safest course in either of those respects. The measure of his duty is to use ordinary care and diligence in such matters and even if it were conceded that it would have been safer to take the doors down with the use of a rope than without it, yet, that fact does not render the defendant liable. Bohn v. Railroad, 106 Mo. 426; Friel v. Railway, 115 Mo. 507; Berning v. Medart, 56 Mo. App. 449; Huhn v. Railroad, 92 Mo. 440; Anderson v. Box Co., 103 Mo. App. 386; Loehring v. Const. Co., 118 Mo. App. 177; Muirhead v. Railroad, 19 Mo. App. 634, 643; Smith v. Railroad, 69 Mo. 37; Bradley v. Railroad, 138 Mo. 293; Tabler v. Railroad, 93 Mo. 85; Minnier v. Railroad, 167 Mo. 112; Savery v. Busick, 11 Iowa 487; Dutton v. Railroad, 66 Iowa 352; Newell v. Wilgus (Pa.), 11 Atl. 365; Railroad v. Furst (Kas.), 45 Pac. 128; Linburg v. Insurance Co. (Iowa), 57 N. W. 630; Wehringer v. Ahlemeyer, 23 Mo. App. 277-281; Mast v. Pearce, 58 Iowa 579; Musser v. Maynard, 59 Iowa 111; Ryan v. Tudor, 31 Kan. 366; Railroad v. Hutchinson, 40 Kan. 51; Drew v. Insurance Co., 6 S. D. 335; Pleasant v. Fants, 22 Wall. 116; Way v. Railroad, 73 Iowa 463; Emerson v. Santa Clara Co., 40 Cal. 543; Miller v. Railroad, 41 Fed. 912.

*Silver & Brown* and *C. C. Lawson* for respondent.

The master is required to exercise the care which the situation reasonably demands in furnishing for the use of his employee such physical means and agencies as are adequate and suitable for the work in hand. Gardner v. Railway, 150 U. S. 349. "The usual and legal duty of every employer is to provide all means and appliances reasonably necessary for the safety of those in their employment." Railway v. Norment, 84 Va. 173. The foregoing is the settled doctrine in this State. Curtis v. Mc-Nair, 173 Mo. 271; Wendler v. Furnishing Co., 165 Mo. 527. The foreman, King, in directing defendant's work

in which plaintiff was engaged when injured was the defendant's vice-principal, and not plaintiff's fellow-servant, and defendant is responsible for King's negligence in the matter of the method and direction of said work. Bane v. Irwin, 172 Mo. 309; Donahue v. Kansas City, 136 Mo. 657; Miller v. Railway, 109 Mo. 350; Edge v. Railway, 206 Mo. 494. The method adopted by a foreman in doing the work of the master is the act of the master and for negligence in that regard the latter is liable. Depuy v. Railway, 110 Mo. App. 120; McGuire v. Railway, 128 Mo. App. 678. So a straw boss, *i. e.*, one acting in the place of the regular foreman, stands in his shoes and represents the master as a vice-principal in controlling and directing the work. Warren v. Railway, 113 Mo. App. 498; Larson v. Mining Co., 71 Mo. App. 518; Smith v. Kansas City, 125 Mo. App. 157. So a negligent order of a foreman may be the basis of a recovery by the servant. Bane v. Irwin, 72 Mo. 317; Foster v. Railway, 115 Mo. 165; Wilson v. Railway, 122 Mo. App. 668. . The servant never assumes the risk of the master's negligence. Smith v. Railway, 125 Mo. App. 150; Harrod v. Packing Co., 125 Mo. App. 357; Wendler v. Furnishing Co., 165 Mo. 527; Garaci v. Construction Co., 124 Mo. App. 709. Nor does the servant assume a risk to which he is exposed by the failure of his employer to exercise ordinary care for his safety. Naughton v. Gas Light Co., 123 Mo. App. 193; Bokamp v. Railway, 123 Mo. App. 271. Assumption of risk being essentially contractual, it disappears from view when negligence appears as the producing cause. Mack v. Railway, 123 Mo. App. 531; Obermeyer v. Chair Co., 120 Mo. App. 60. Contributory negligence is usually a question for the jury. Covell v. Railway, 82 Mo. App. 183; Harriman v. Star Co., 81 Mo. App. 124. "What is the proximate cause of an injury and what directly contributed to an injury are ordinarily questions of fact for the jury." Needham v. Railway, 69 Fed. 825 (Opinion by Sanborn, Circuit Judge) ; Railway v. Kellogg, 94 U. S. 469; Clemmens v.

Railway, 53 Mo. 366; Lawrence v. Railway, 119 Mo. App. 325; Dunn v. Railway, 21 Mo. App. 190. The definition of "proximate cause" given in plaintiff's instruction No. 3 1-2, is in substantial accord with the decisions in this State; if anything it is too favorable to defendant. Foley v. McMahon, 114 Mo. App. 442; Miller v. Railway, 90 Mo. 389; Hoepper v. Hotel Co., 142 Mo. 379; Harrison v. Electric Light Co., 195 Mo. 629.

BROADDUS, P. J.—This is a suit to recover damages for injuries sustained by plaintiff by reason of the alleged negligence of defendant.

The main facts of the case are as follows: In October, 1903, plaintiff, then nineteen years of age, was in the employ of defendant at its roundhouse at Hannibal, Missouri, in the capacity of a carpenter and worked with the bridge and building gang of defendant. The plaintiff and other members of the gang were engaged in removing old doors from defendant's roundhouse. One H. S. Stansberry was the foreman of the gang. The plaintiff and three others, named Geren, Rood and Cook, were doing the work and a man by the name of King was superintending it and also assisting to some extent. Stansberry left the city before the work was begun, but left King in control and told plaintiff to do whatever King directed him to do.

King directed the men to take down the doors. The method of taking them down at the beginning was for two men with crowbars to pry up the doors until they raised them off their hinges and to tie a rope around them under the hinges and then place the rope over one of the pins in the wall on which a hinge had rested. This rope held the door in position and by means of it the door was let down on the outside of the building. After the doors were raised, they stood about perpendicular, but slightly leaning outward, so that when let go they fell outside of the building. The men were on the

inside; therefore by this method of handling them there was no danger to the men when a door fell.

There were eight stalls of the roundhouse, each with double doors, making in all sixteen doors, each twelve feet high, six feet wide and three inches thick and weighing about six hundred pounds.

Plaintiff's evidence tends to show that after they had taken down four or five doors King directed them to discard the use of the rope as it was not necessary, he said. The method thereafter adopted was the same except two men held the door, steadied it and pushed it out after it had been raised high enough for that purpose. All the doors had been removed in safety except the last. Each door as it was let down fell upon a car which was placed in position for the purpose on the tracks that led into the roundhouse. The car was then pushed by the men to the scrap-pile, some distance away, when the door was unloaded and the hinges removed; then some of the men would push the car back to receive the next door. After the door preceding the last one had been taken down, it was taken as the former ones to the scrap-pile and unloaded, and the car was pushed back by King while the plaintiff and the other three workmen walked back. One of the men went for a drink of water. During his absence, plaintiff and the other two undertook to take down the last door. Plaintiff and one of them pried up the door, as they had usually done, and the other man undertook to steady it, but it appears that he was unable to do so, and it fell inward and caught plaintiff in its descent and severely injured him. It was not shown definitely where King was at this time, but we gather from the testimony that he was nearby, having come up with the car, but there is no evidence that he participated in this last part of the work or make any suggestions whatever while it was in progress. It was also shown that King assured plaintiff that it was easier and safer to take down the doors without the use of the rope. The evidence on the part of defendant tended to show that the method of

taking down the doors without the rope was as safe as with it.

The plaintiff seeks to recover upon the grounds that the door fell upon him because of the negligence of defendant in failing to furnish ropes and other suitable appliance with which to control the door to prevent its falling; and by reason of the negligence of defendant's foreman in assuring plaintiff that the work could be safely done without the use of ropes and other appliance; and also by reason of the negligence of defendant in failing and omitting to furnish a sufficient number of men to remove said door.

The plaintiff recovered judgment for the sum of $2,000, from which defendant appealed.

The defendant contends that under the pleadings and evidence plaintiff was not entitled to recover.

The court submitted the case to the jury on instruction No. 1, given at the instance of the plaintiff, that, if King was at the time the acting foreman of defendant's work in taking down the doors, and as such had the control and direction of the work; that he ordered plaintiff and the other workmen to take down the door which fell on plaintiff without the use of the rope, and that his conduct in that respect was negligent; and that by reason of such negligence and as the natural and direct result thereof, the said door while being taken down fell on and injured plaintiff, it should return a verdict in his favor.

The defendant has suggested two main objections to said instruction. First, that the evidence does not show that King had the authority to control and superintend the work. The reason given for this position is that Stansberry had no authority to delegate his powers to another.

It is said that, "It is a settled principle in the law of agency that where an authority is conferred requiring skill or discretion on the part of an agent, and no power of substitution is given, then the agent must act in person, and the principal would not be bound by any act of

a subagent. But this doctrine has no application to the responsibilities of an accident insurance company for acts of its subagents." [Brown, Adm'r, v. Assurance Co., 45 Mo. 221.] And the same rule was declared in Grady v. Insurance Co., 60 Mo. 116, with the qualification that in matters purely ministerial it is not necessary that the agent should do such acts in person; if he direct the act to be done, it is sufficient. And it is held that a "straw boss," that is, one acting in the place of the regular foreman, stands in his shoes and represents the master in directing and controlling the work. [Warren v. Railway Co., 113 Mo. App. 498.] This objection is not well taken.

Secondly, that the evidence shows that the injury to plaintiff was not the proximate result of changing the method of doing the work by dispensing with the use of the rope, but that on the uncontradicted evidence the injury was the result of plaintiff's negligence in undertaking with two others to do the work—an insufficient number for the purpose.

It was disclosed by the evidence that King, the straw boss, did not direct or participate in taking down the door, but that plaintiff and his two colaborers undertook the work and that the door fell by reason of the absence of the other man to assist in steadying it to prevent it falling inside. This, the evidence makes clear. It is possible, and even probable, the door would not have so fallen had the rope been used, but the failure to use the rope was not the direct and proximate cause of the result but the remote cause. The intervening, proximate and direct cause for the injury was the negligence of plaintiff and his two colaborers in undertaking the work without the assistance of the fourth man.

Plaintiff has moved to strike out defendant's bill of exceptions: first, because the record does not show a proper filing; secondly, because all the evidence is not incorporated therein. We have examined the matter fully and are satisfied that the motion is not well taken.

As the question already decided disposes of the case, we will not enter on inquiry of the numerous other questions raised on the appeal. For the reasons given, the cause is reversed. All concur.