ANICE MARTIN, Respondent, v. MODERN WOOD-
MEN OF AMERICA, Appellant.

St. Louis Court of Appeals, June 30, 1911.

1. **DEATH: Presumption from Absence: Pleading: Fraternal Beneficiary Associations.** In an action on a certificate issued by a fraternal beneficiary association, where the presumption of death from absence was relied upon, the time of insured's death was not made issuable merely because it was alleged in the petition, such allegation being surplusage; and it was permissible to show the disappearance of insured, as one of the facts going to establish the presumption that he died, under the allegation of the ultimate fact of his death.

2. ———: ———: **Sufficiency of Evidence: Fraternal Beneficiary Associations.** In an action on a certificate issued by a fraternal beneficiary association, evidence *held* sufficient to meet the requirements of the rule that where there is an unexplained absence for seven years without tidings to those likely to have heard from such person, if living, and there does not appear to have been any probable motive for such absence, and unavailing search has been made, a presumption of continued life ceases.

3. ———: ———: ———: ———.In an action on a certificate issued by a fraternal beneficiary association, evidence *held* to show a sufficient search for the missing person to support the presumption of death from absence.

Martin v. Modern Woodmen.

4. **FRATERNAL BENEFICIARY ASSOCIATIONS: Limitation: Waiver of Policy Provision: Pleading: Evidence.** In an action on a certificate issued by a fraternal beneficiary association, proof of waiver of the twelve month limitation, within which the policy required action to be brought, was permissible without the waiver having been specially pleaded; such proof being permissible under the allegation of full performance of the conditions.

5. ————: ————: ————: **Facts Stated.** Where the general attorney of a fraternal beneficiary association, knowing that plaintiff, a beneficiary, depended on showing the death of insured by evidence of his absence for seven years, and that plaintiff's time allowed by the policy for bringing suit was passing, in correspondence with plaintiff insisted repeatedly upon more information as to the disappearance of and search for insured, and postponed final decision from time to time up to and beyond the expiration of the time limited by the policy, and then placed the refusal to pay the claim on the ground that the association was not satisfied that insured was dead, his letters indicating to a reasonable mind a desire that plaintiff postpone bringing suit until the association had completed its investigations, a finding of waiver of the limitation was justified.

6. ————: **Amount of Recovery: Defenses: Pleading: Burden of Proof.** In an action on a certificate issued by a fraternal beneficiary association, by which it agreed to pay a stipulated sum to the beneficiary upon the death of insured, the burden of pleading and proving conditions which would delay or diminish the beneficiary's recovery rests upon the association, and, in the absence of such pleading and proof, the beneficiary's absolute right to the stipulated amount will be assumed.

7. ————: **Presumption of Death from Absence: Amount of Recovery: Interest.** When the contingency of death of one whose life is insured by a fraternal beneficiary association occurs, the obligation of the association becomes absolute and the sum presently due, and, by virtue of section 7179, Revised Statutes 1909, allowing interest on written contracts, the beneficiary becomes entitled to interest after the amount becomes due; and where the proof of death depends on absence for seven years, the interest runs from the expiration of that time.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

Martin v. Modern Woodmen.

*Benjamin D. Smith* and *F. H. Bacon* for appellant.

(1) The petition alleging that Henry J. Wilt died on or about the 14th day of March, 1907, it was error to admit proof of disappearance. Plaintiff did not attempt to show that Wilt actually died on or about the 14th day of March, 1907, but relied upon the presumption of continued life ceasing at the end of seven years from the time Wilt was last seen. The proof must support the allegations of the pleadings. Jones v. Lauderman, 39 Mo. 287; Greene v. Gallagher, 35 Mo. 226; Bradley v. Modern Woodmen, 146 Mo. App. 428. (2) The only evidence of the death of Wilt is the fact that he left his wife and that she has not heard from him during a period of seven years. Wilt was a cigar-maker, could get work anywhere, and had no children. The evidence offered does not meet the requirements of the law. The rule is that where there is an unexplained absence for a period of seven years without tidings to those who would likely have heard from such person, if living, and there does not appear to have been any probable motive for such absence, and search for him has been unavailing, the presumption of continued life ceases. Bradley v. Modern Woodmen, 146 Mo. App. 428; Biegler v. Supreme Council, etc., 57 Mo. App. 419; Flood v. Growney, 126 Mo. 262; Winter v. Supreme Lodge, 96 Mo. App. 1. (3) There must have been reasonable and fruitless search or inquiry made for the person so shown to have been absent. The presumption of death from unexplained absence is not an absolute one, and considering modern facilities for communication and search, it is necessary that a reasonable search be made. No search was made in this case. Modern Woodmen v. Gerdom, 82 Pac. 1100; Hoyt v. Newbold, 45 N. J. L. 219; Bradley v. Modern Woodmen, 146 Mo. App. 428; Winter v. Supreme Lodge, 101 Mo. App. 550. (4) The provision in the contract limiting the time for bring-

ing suit was valid and binding. Dolan v. Royal Neigh-
bors of America, 123 Mo. App. 147; Roberts v. Mod-
ern Woodmen, 133 Mo. App. 207.   (5) No waiver of
this limitation provision in the contract being pleaded,
the court erred in admitting any evidence tending to
show a waiver. Bray v. Marshall, 75 Mo. 327; State
ex rel. v. Railroad, 140 Mo. 539.

*Glendy B. Arnold* for respondent.

(1)   Appellant's first assignment of error as to
the admission of evidence of the disappearance of Wilt
should be overruled.  (a)  The grounds of the objec-
tion are not disclosed.  Hutchinson & Co. v. Morris
Bros., 131 Mo. App. 258.  (b) The objection came too
late and no motion was made to strike the evidence
out.  Grocery Co. v. Smith, 74 Mo. App. 419; Express
Co. v. St. Ry. Co., 126 Mo. App. 471.  (2) Appellant's
fifth assignment of error is untenable.  (a)  Because
the objection urged in this court was not made at the
trial.  Smith v. Railroad, 127 Mo. App. 160.  (b) It
is not necessary to plead waiver in insurance cases.
Andrus v. Ins. Assn., 168 Mo. 151; McCullough v.
Ins. Co., 113 Mo. 606; Burgess v. Ins. Co., 114 Mo.
App. 169; Carp v. Ins. Co., 116 Mo. App. 528; Wice-
carver v. Ins. Co., 137 Mo. App. 247.  (c)  Evidence
of unexplained absence for more than seven years was
competent·to prove the charge of death.  Sec. 6340,
R. S. 1909; Hancock v. Ins. Co., 62 Mo. 26; Flood v.
Growney, 126 Mo. 262; Winter v. K. of P., 96 Mo.
App. 1.  (d) It was not necessary to prove the exact
date of Wilt's death.  As no issue was made on that
point at the trial, it will not be reviewed on appeal.
Althoff v. Transit Co., 204 Mo. 166; Bertrand v. Tran-
sit Co., 108 Mo. App. 70. (3) Plaintiff's sixth assign-
ment of error, that a peremptory instruction should
have been given, ought to be overruled. (a) The one
year limitation clause of the policy, being in violation

of a positive statute of this State, is non-enforceable here against one of our citizens, though valid in the State of Illinois. Sec. 2780, R. S. 1909; Bryan v. Brisbin, 26 Mo. 423; Thurston v. Rosenfeld, 42 Mo. 474. (b) The evidence shows conclusively that there was a complete waiver of the one year limitation clause of the policy. Defendant's denial of all liability, after the expiration of the one year in which it contends plaintiff was required to bring her action under the limitation clause of the policy, on the sole ground that it was not satisfied that Wilt was dead, is a waiver of the limitation clause of the contract. Jefferson v. Life Assn., 69 Mo. App. 126; Keller v. Ins. Co., 95 Mo. App. 627; Winter v. Lodge, 96 Mo. App. 1. (4) The verdict is not excessive. Interest began to run from the date the amount of the policy was due. Formal demand, therefore, was unnecessary. Sec. 7179, R. S. 1909.

STATEMENT.—Suit filed September 9, 1908, by the widow of Henry J. Wilt, as beneficiary in a benefit certificate for one thousand dollars issued to Wilt by the defendant, a fraternal beneficiary association, on August 6, 1906. The plaintiff had judgment for one thousand and eighty-nine dollars and sixteen cents, the amount of the certificate and interest from March 14, 1907, and defendant has appealed. The petition was in usual and proper form and avers, among other things, that "on or about the fourteenth day of March, 1907, the said Henry J. Wilt died, and at the time of his death he was a member in good standing in defendant order and had complied with all the laws, rules and requirements of said order;" also, "that since the death of said Henry J. Wilt, she (the plaintiff) has fully complied with all the terms and conditions imposed upon her by said contract," the benefit certificate. It prays for judgment for the sum of one thousand dollars, with interest thereon and costs of suit. The answer, after a general denial, admits in effect

that ''on the sixth day of August, 1896, the defendant issued its benefit certificate number 267238 to said Henry J. Wilt, wherein and whereby, under the certain conditions mentioned in said contract and subject to the laws, rules and regulations of said order forming a part thereof, this defendant promised to pay to Anice Wilt the sum of one thousand dollars upon the death of said Henry J. Wilt, if, at the time of his death, he should have complied with all the laws, rules, and regulations of defendant's said order and be a member in good standing thereof;'' and then among other things avers that the benefit certificate sued on was issued by appellant, an Illinois corporation, to Henry J. Wilt, at the time of its issue a resident and citizen of the same state, and that the benefit certificate contained a stipulation that no action shall be maintained unless brought within one year after Wilt's death and that this provision of the contract was a valid and binding agreement under the laws of the State of Illinois as construed by the courts of that state in certain cases in the answer cited; that if it be true as averred in the petition that said Henry J. Wilt died on the fourteenth day of March, 1907, this action, as set forth in said petition, was not commenced within one year from the date of the death of said Henry J. Wilt. The reply was a general denial.

There is no necessity for stating all the facts or evidence shown in support of the plaintiff's petition. It is sufficient to say that plaintiff's evidence made a prima facie case, unless it be that the fact of Wilt's death was not properly and sufficiently proven. We will confine our statement to the evidence bearing on that fact and on the defense that the action was not brought within a year as stipulated and on the waiver of that stipulation relied upon by the plaintiff and the question of what date interest should have been allowed from. We may say here, however, that plaintiff

necessarily relies upon the common law presumption to establish Wilt's death, and the facts must be sufficient to create that presumption.

By the certificate, which was offered in evidence, defendant certified "that Neighbor Henry J. Wilt, a member of Laurel Camp No. 1246, located at East St. Louis, Illinois, is, while in good standing in this fraternity, entitled to participate in its benefit fund to an amount not to exceed ten thousand dollars, which shall be paid at his death to Anice Wilt, related to him as wife, subject to all the conditions of this certificate and by-laws of this order and liable to forfeiture if said member shall not comply with said conditions, laws and such by-laws and rules as are or may be adopted by the head camp of this order from time to time, or the local camp of which he is a member." It then contains, among other things not necessary to note, the following: "This benefit certificate is issued and accepted only upon the following express warranties, conditions and agreements."

"4. In case of his death while a member of this fraternity, in good standing, his beneficiary shall receive such sum as may be collected from an assessment upon all members according to the certificates held by each, but said sum to be paid shall not exceed the amount stated on the face of this certificate."

"7. No action can or shall be maintained on this certificate unless brought within one year from the date of the death of said neighbor."

Wilt, a cigarmaker, then about forty-one years of age, married the plaintiff in the city of St. Louis on October 15, 1895. In April, 1896, they went to housekeeping at No. 207½ North Twelfth street in said city and lived together there until March 12, 1900, when he disappeared. Their married relations were invariably pleasant and amicable and he was a kind husband and seemed devoted to his home, though he was not of a jolly disposition, and being better educated than the

plaintiff, sometimes corrected her. He contributed some nine dollars per week toward the support of the home, which sum plaintiff added to by renting out two of their four rooms. The couple were childless. His place of employment during all the time of the marriage until he disappeared was a cigar factory in East St. Louis. For some two years before his disappearance he had been in bad health and on that account for two years had usually, though not always, slept in a room in East St. Louis which he shared with three men, paying as his share one dollar per week. He had an antipathy toward East St. Louis as a place of residence, hence did not take his wife there to reside. He usually came to his home in St. Louis and spent Saturday and Sunday with his wife. He was a member of the East St. Louis lodge of the defendant order and was an officer therein, and a regular attendant at its semi-monthly meetings. The week before his disappearance he came home sick on Thursday and did not go to work until Saturday morning. He returned home Saturday night and left Monday morning about eight o'clock and went to the cigar factory in East St. Louis, where he was working at the time. He had only his every day clothes, the clothing he had on, with him. His overcoat was at his place of employment in East St. Louis. All his other clothing was at his home in St. Louis. There was no apparent reason for his absconding and concealing himself. Plaintiff has never seen or heard of him since. She did not become alarmed until he failed to come home on Saturday. She then wrote a letter to him and received no answer. On Tuesday she commenced a search for him. She first went to his place of employment in East St. Louis and inquired for him. His employer told her that he had left there in the afternoon of the Tuesday before. His employer had not remarked his failure to return to work because he was in poor health, and privileged to come and go as he liked, and it was thought that he

was at home. She then went to her own relatives and Wilt's friends and associates. She wrote inquiring letters to friends in other towns where he or she had visited. She visited the morgue; reported the disappearance to the police and asked them to search for him; she advertised his disappearance in a St. Louis newspaper. She notified the officials of defendant's lodge to which Wilt belonged, and the matter was taken up in open meeting and all the members were urged to aid in the search and did join therein. Her relatives and his friends joined in making inquiries with a view of finding Wilt. All this was of no avail. Wilt has never been seen or heard of nor his disappearance or absence accounted for or explained. One man who knew him testified that he saw him the day he disappeared and that he appeared sick and was on his way home. At the end of the seven years plaintiff made demand for her money, personally of the local clerk and by letter of Mr. Plantz, the general attorney of the defendant. The local clerk also filed her claim for her in regular form with the general officers. He was also in communication with Plantz, the general attorney, and with Mr. Reilly, one of the board of directors of the defendant order. This board meets once a month and passes upon all death claims. At the request of director Reilly the local clerk requested the plaintiff to postpone bringing the suit. On March 19, 1907, a few days after the seven years had elapsed, Plantz commenced a correspondence with the plaintiff concerning her husband's death and status in the order, which was prolonged on his account up to August, 1908. On March 19, 1907, he wrote stating that he desired more detailed information regarding her husband's disappearance and what had been done to find him, and asking her to write him fully about the matter. On March 30, 1907, he wrote, thanking her for a letter she had written, and asking for more detailed information as to the search made by her and

others. He asked her to give him all this information at once, so that he could properly investigate the matter. On June 17, 1907, he wrote asking for more information bearing on the nature and extent of the inquiry she had made in the search for her husband. On June 27, 1907, he wrote stating that certain investigations he had made had failed to bear out her statements as to inquiries she had made and asking for her explanation. On January 17, 1908, he wrote acknowledging receipt of two letters from her, and apologizing for the delay in answering them. In this letter he said, ''You ask me to tell you what we are doing in regard to your claim. I have not understood that you were presenting a claim of any kind, but I thought that you were simply trying to locate your husband.'' He stated, however, that he expected to be in St. Louis in a short time and if possible wanted to talk the matter over with her personally. On June 29th, 1908, he wrote acknowledging her letter of the 25th inst. regarding her claim, and stating that he had been trying to locate Wilt and had thought he had him located but found that he could not complete his investigation before next month, etc. He stated he would be pleased to advise her further as soon as he could satisfy himself whether or not Wilt was living. On July 8th, 1908, he wrote replying to a letter from her stating that he could not do otherwise than as expressed in his letter to her on June 29th, and if this was not satisfactory she might use her own judgment as to what course to pursue. On August 12th, 1908, he wrote to plaintiff's attorneys answering a letter from them and saying that the board of directors at their June session, 1908, had rejected the claim and denied all liability by virtue of the benefit certificate, ''not being satisfied that Henry J. Wilt was dead.''

It was admitted by the plaintiff that under the laws of the State of Illinois the clause in the benefit certificate requiring suit to be brought within one year

after the death of the insured or "neighbor," is valid and binding in that state under the laws and decisions of the courts as pleaded in defendant's answer.

Defendant introduced in evidence a provision of the by-laws negativing the authority of the clerk of the local camp to create a liability or waiver on the part of the defendant order.

No instructions were given on behalf of the plaintiff. At the instance of the defendant the court gave six instructions which, after placing upon the plaintiff the burden of proving Wilts death and of excluding with as much certainty as possible reasonable belief to the contrary, instructed the jury in great detail and in a manner exceedingly favorable to the defendant concerning the presumption of death and the facts assumed to be essential to establish it.

CAULFIELD, J. (after stating the facts).— I. Defendant first assigns as error the action of the trial court in "overruling defendant's objection to any evidence concerning disappearance under the allegation in the pleadings of "death at a certain time." This assignment of error is not well taken. The disappearance was one of the facts going to establish the presumption that Wilt died. It was a merely evidential fact and permissible to be shown under the allegation of the ultimate fact of Wilt's death. Defendant appears to concede this, but lays stress on the fact that the allegation is that Wilt died at *a certain time* and assumes that the exact time of the death thereby became the issuable fact, and contends that the evidence did not tend to prove it. Defendant's assumption is unfounded. The time of Wilt's death was not made issuable merely by pleading it. It was unnecessary to allege it in order to state plaintiff's cause of action, and striking it out would leave a good statement. It concerned only the special defense that the suit was not commenced within the period prescribed by the con-

tract and was matter coming more properly from the defendant. It may be treated as surplusage.

II. The defendant contends that the evidence offered does not meet the requirements of the law and states the rule as follows: "The rule is that where there is an unexplained absence for a period of seven years without tidings to those who would likely have heard from such person, if living, and there does not appear to have been any probable motive for such absence, and search for him has been unavailing, the presumption of continued life ceases." It is sufficient response to this contention that the proof makes plaintiff's case measure up to every requirement of the rule as stated by defendant's counsel.

III. Defendant's counsel solemnly asserts that "No search was made in this case." Without deeming it necessary to decide whether proof of reasonable search was required, we are satisfied that sufficient diligence was exercised to discover Wilt's whereabouts or probable fate, to satisfy the law. Indeed, the statement that no search was made is an astonishing one in the face of the evidence. It is difficult to conceive of a widow in humble circumstances making a more diligent search, even if we ignore the assistance in that respect she received from the officers and members of the defendant order.

IV. Proof of waiver of the twelve months limitation was permissible without the waiver having been specially pleaded. Such proof was permissible under the allegation of full performance of precedent conditions on the part of the assured contained in the petition. Such is the rule in suits on insurance policies. [Burgess v. Insurance Co., 114 Mo. App. 169, 190, 89 S. W. 568.]

V. We are also of the opinion that there was evidence tending to show a waiver of the limitation suffi-

cient to support a finding to that effect. The defendant, by its general attorney, knowing that plaintiff's time for bringing suit was passing, insisted upon more and more information and postponed final decision from time to time up to and *beyond* the expiration of the year and then placed its refusal upon the ground that it was not satisfied that Wilt was dead. Its letters would indicate to a reasonable mind a desire that plaintiff wait and postpone bringing suit until it might complete its investigations, and an intention to pay if such investigation proved satisfactory regardless of whether such result occurred after the year had expired. Such conduct was inconsistent with an intention to plead the delay so brought about in bar of the action and is sufficient to justify the finding of a waiver. [Okey v. State Ins. Co., 29 Mo. App. 105.] Although the elements of estoppel *in pais* are present in the case, the letters of the defendant by its general attorney suggest an intention on the part of the defendant to relinquish its right to have suit brought within a year and were sufficient to support a finding that the defendant waived the limitation. We assume, of course, that the general attorney was acting in good faith and not with a view fraudulently to mislead this widow into postponing her action until it was barred by lapse of time.

In this opinion we have assumed, without feeling the necessity of deciding, that under the facts and circumstances of this case the contract is to be regarded as an Illinois contract and enforceable as such in the courts of this state.

VI. Equally untenable is the contention that the verdict was excessive because it allowed interest from March 14, 1907. So far as the pleadings and proof disclose, the entire contract was in writing and promised to pay a certain sum, one thousand dollars, upon the happening of a contingency, the death of Wilt, to

a certain person, this plaintiff. If there were conditions which would have delayed or diminished plaintiff's recovery, the burden of pleading and proving them devolved upon the defendant and in the absence of such pleading and proof we must assume their non-existence and assume plaintiff's absolute right to have the one thousand dollars at Wilt's death as promised. [Frame v. Sovereign Camp Woodmen of the World, 67 Mo. App. 127.] When the contingency occurred, the obligation was binding and absolute, and the sum presently due. [Brown v. Railway Passenger Assurance Co., 45 Mo. 221.] Under these circumstances by virtue of our statute allowing interest on written contracts, the plaintiff was properly allowed interest after it became due and payable, i. e. at Wilt's death [Sec. 7179, Revised Statutes 1909; 4 Cooley's Briefs on Insurance, p. 3864; Knights Templars Indem. Co. v. Crayton, 209 Ill. 550; Brown v. Assurance Co., supra; Hellier v. Franklin, 1 Starkie's Reports, 291], which death is presumed to have occurred by March 14, 1907, at least; that being after the seven years had expired. [Lawson on Presumptive Evidence, p. 251.]

Finding no prejudicial error in the trial of the case, the judgment is affirmed. *Reynolds, P. J.,* concurs; *Nortoni, J.,* not sitting.