NEW YORK LIFE INS. CO. v.
GRIESEDIECK.

No. 11722.

Circuit Court of Appeals, Eighth Circuit.
Jan. 8, 1941.

Rehearing Denied Jan. 31, 1941.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones and Lon O. Hocker, both of St. Louis, Mo., and Louis H. Cooke, of New York City, on the brief), for appellant.

William L. Mason, of St. Louis, Mo. (Vincent M. Flynn, of St. Louis, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

GARDNER, Circuit Judge.

This suit was brought by appellant, New York Life Insurance Company, under the Federal Declaratory Judgment Act, 28 U.S. C.A. § 400, seeking a declaration of the rights and privileges of the parties under the double indemnity or accidental death clause of a policy of life insurance issued by that company upon the life of Raymond B. Griesedieck, the appellee being named as beneficiary in said policy.

The insured died July 12, 1930. Upon his death the insurance company paid to the beneficiary the amount due under the strictly life insurance provisions of the policy. The policy contained provision that an additional sum of $5,000 would be paid if insured's death should result from bodily injury effected solely and independently of all other causes through external, violent and accidental means. The policy was in full force and effect at the time of the insured's death.

The case was tried to the court without a jury and resulted in findings and conclusions in favor of the beneficiary and from the judgment entered thereon the insurance company prosecutes this appeal. It contends in substance: (1) That sunstroke or heat prostration is not effected through "accidental means" when there was no accidental, unintentional or involuntary exposure to the direct rays of the sun; (2) that sunstroke or heat prostration due to general atmospheric conditions, and not to an exposure to the direct rays of the

sum, is not effected through means which are external and violent, as required by the policy; (3) that the payment of the policy being conditioned upon the furnishing of proof of loss, interest was only recoverable from the date that such proof was furnished or demand made for the payment of the policy.

The substantial question at issue is whether the insured's death from heat prostration or sunstroke was, within the meaning of the policy, caused by a bodily injury effected solely and independently of all other causes through external, violent and accidental means.

The insured was a large man, weighing about 290 or 300 pounds. About the middle or latter part of June, 1930, he began to complain of numbness in his feet, as well as in his hands, and the doctor was called June 25, 1930, after which time he remained at home. He was considerably bothered by heat from July 1, 1930, to July 12, 1930. Prior to July 7, his temperature was normal, but on July 7 he developed half a degree of temperature, while on the night of July 11 there was a sudden jump in his temperature to 104 degrees. The following morning his attending physician called about 11:00 o'clock and found that his temperature was 110 degrees. He diagnosed the trouble as heatstroke or sunstroke. The doctor and insured's wife worked over him, applying ice until about 2:30 in the afternoon and succeeded in bringing his temperature down somewhat. Insured was unconscious after the arrival of the doctor until his death, which occurred about 11:00 o'clock the night of the 12th, except for a short interval at about 2:30 in the afternoon. His skin was hot to the touch, red and very dry. Insured lived in an apartment with a southwest exposure. Describing this apartment, Mrs. Griesedieck testified: "The one on the street where the sum would beat in all afternoon."

The court found that death was a result of sunstroke. It appeared from the testimony that the temperature range in St. Louis for the month of July, 1930, was from 80 to 104 degrees. On July 11, it ranged from 84 to 104 degrees, and on July 12, from 85 to 103 degrees. On July 12, the temperature at 1:00 p. m. was 101 degrees, at 5:00 p. m. it was 100 degrees, and at 11:00 p. m. it was 90 degrees. The humidity at noon of July 12 was 37 per cent and at 7:00 p. m. on that day it was 30 per cent.

There was expert testimony to the effect that there was no difference between a sunstroke caused by exposure to the direct rays of the sun and sunstroke caused by atmospheric conditions, the witness saying that, "the origin of the heat apparently makes no difference whether it is directly from the sun or whether the patient is in extremely hot temperature with the exclusion of the sun." He testified that there may be sunstroke even though the patient may not be in the sun.

In determining the issues, the law of Missouri must be applied. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290. Conceding this to be the rule, appellant contends that there are no controlling decisions by the Supreme Court of Missouri and that we are not bound by the decisions of the intermediate appellate courts, citing Hudson v. Maryland Casualty Co., 8 Cir., 22 F.2d 791; Turner v. New York Life Ins. Co., 8 Cir., 100 F.2d 193. Since these cited cases were decided by this court, however, the Supreme Court has by controlling decisions held that the Federal court is not free to reject the state rule of law merely because it may not have received the sanction of the highest state court, and that it is the duty of the Federal court to ascertain from all available data what the state law is and apply it; that in ascertaining what the law is, the decisions of an intermediate appellate state court are not to be disregarded, "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. American Telephone & Telegraph Co., 61 S.Ct. 179, 183, 85 L. Ed. ——, decided December 9, 1940; Fidelity Union Trust Co. et al. v. Field, 61 S.Ct. 176, 85 L.Ed. ——, decided December 9, 1940; Six Companies of California et al. v. Joint Highway District No. 13 of the State of California, 61 S.Ct. 186, 85 L.Ed. ——, decided December 9, 1940; Stoner v. New York Life Ins. Co., 61 S.Ct. 336, 85 L.Ed. ——, decided December 23, 1940.

In West v. American Telephone & Telegraph Co., supra, the opinion in which was written by Mr. Justice Stone, it is said: "A state is not without law save as its highest court has declared it. There are

many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior the state rule may appear from the viewpoint of 'general law' and however much it may have departed from prior decisions of the federal courts."

In Fidelity Union Trust Company, et al. v. Field, supra [61 S.Ct. 178, 85 L.Ed. ——], Chief Justice Hughes, in delivering the opinion, said: "An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question."

Appellee in support of the judgment of the lower court relies largely upon the decisions of the Missouri Court of Appeals in Farmer v. Railway Mail Association, 227 Mo.App. 1082, 57 S.W.2d 744, and Layton v. Metropolitan Life Ins. Co., Mo.App., 89 S.W.2d 576. Referring to these decisions, it is said by counsel for appellant in their brief that, "while it is true that in Layton v. Metropolitan Life Insurance Co. (Mo.App.) 89 S.W.2d 576, and Farmer v. Railway Mail Ass'n, 227 Mo.App. 1082, 57 S.W.2d 744, 745, the intermediate appellate court of Missouri held that insured's death from sunstroke was caused by accidental means notwithstanding that it was apparently the result of the insured having voluntarily exposed himself to the rays of the sun, nevertheless it is well settled that the decisions of the intermediate appellate courts are not controlling upon this court." Since appellant's brief was written and since this case was argued, the Supreme Court in the above cited cases has, as already observed, held otherwise.

In Farmer v. Railway Mail Ass'n, supra, plaintiff, a clerk in the railway mail service, was' striken with sunstroke on his way home and died within two days. In the course of the opinion it is said: "That sunstroke results from the application of an external physical force can hardly be questioned. The action of the heat rays of the sun upon the body directly or indirectly is as much the action of a physical force as is the blowing of the wind. So that sunstroke, with respect to the manner of its infliction, has all the characteristics of an injury. * * * An examination of the sunstroke cases cited by counsel in the present case discloses that the courts have sometimes overlooked this distinction, treating the act of the insured as the means producing the sunstroke, apparently oblivious of the fact that the means of producing the sunstroke was the action of an extraneous physical force—the heat of the sun. * * We are not persuaded to the defendant's view that, because the insured did nothing unintentional to cause the sunstroke he received, but pursued his usual activities during the day—in other words, did not run away from the heat, if this were possible—therefore the application of the heat forces to his body, which was the means that caused the sunstroke, was intentional on·his part, and not accidental. This view makes the action of the·insured the means producing the sunstroke, rather than the action of the sun's heat, which comes without the volition of any mortal being."

In Layton v. Metropolitan Life Ins. Co., supra, a decision by the Kansas City Court of Appeals, the insured suffered a sunstroke while working in a box car on a hot day. The court approved and followed the doctrine announced in Farmer v. Railway Mail Ass'n, supra, and in the course of the opinion said [89 S.W.2d 578]: "We are convinced that the principle announced in that case is sound. Applying that principle to the facts in the present case, we hold that a death caused by heat prostration was caused by external, violent, and accidental means."

■ These authorities, we think, sustain the judgment of the lower court in so far as the judgment appealed from held the insured's death by sunstroke was within the accidental provisions of the policy.

■ One further question must be considered. Although the insured died in 1930, no demand was made upon the insurance company under the double indemnity provision of the policy until July 21, 1937. In entering judgment against the insurance company, the court calculated interest upon the sum of $5,000 at the rate of 6 per

cent per annum from July 12, 1930, to February 19, 1940, the date of entering the judgment. The amount of interest included in the judgment is the sum of $2,880.75. Under the provisions of the policy, the double indemnity benefit was payable only upon receipt by the insurance company of due proof that the insured's death was the result of an accidental bodily injury. No proof was furnished that the insured's death so resulted, and no claim or demand was made under the double indemnity benefit until July 21, 1937. The insurance company denied liability under this claim on the ground that the insured's death was not the result of an accidental bodily injury. The rights of the beneficiary were conditioned upon the furnishing of due proof. Hence, there could be no recovery until that condition had either been complied with by the beneficiary, or had been waived by the insurer. There was no waiver until demand was made upon the company and it refused to pay. The insurer at no time denied liability on the ground that the policy was not in force at the time of the insured's death, but its denial of liability was bottomed on the ground that the insured's death was not the result of an accidental bodily injury within the meaning of the policy. Until July 21, 1937, no such claim was asserted on behalf of the beneficiary. So far as appears from the record, she accepted the life payment without protest or without claim for double indemnity. To allow interest prior to the date of demand would be unjust, and we have been cited to no Missouri decisions justifying the allowance of such interest. By analogy, the case of Rasch v. Bankers' Life Ins. Co., Mo.App., 201 S.W. 919, would seem to be persuasive. In that case, the policy provided for the payment of $2,000 upon receipt of due proof of insured's death. Insured died October 18, 1913, and suit was instituted on the policy May 3, 1916. There was judgment in favor of the beneficiary for the face amount of the policy, together with interest from October 25, 1913. On appeal the court held that the inclusion of interest in this judgment was erroneous as there was no evidence that proof of insured's death was furnished to the company and that it was not alleged that demand had been made upon the company prior to suit for the payment of the policy. It was held that interest was recoverable only from the date the suit was instituted. See, also: Wood v. General Ins. Co., 229 Mo.App. 296, 77 S.W.2d 167.

The applicable Missouri Statute (Sec. 2839 R.S.Mo.1929, Mo.St.Ann. § 2839, p. 4623) provides, so far as here applicable, as follows: "Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due *and demand of payment is made*. [Italics supplied.]"

It has been held by the Missouri courts that this statute is applicable to actions on insurance policies. Martin v. Modern Woodmen of the World, 158 Mo. App. 468, 139 S.W. 231; Brown v. Railway Passenger Assur. Co., 45 Mo. 221.

The judgment appealed from is therefore modified by deducting the amount of interest as included therein, and the court is directed to calculate interest only from July 21, 1937, and as so modified it is affirmed.